UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 9:13-cv-80923-KLR

TODD STANAFORD a/k/a JERALD TODD STANAFORD, on behalf of himself and all others similarly situated,

                  Plaintiff,

vs.

ROBERT DONALD BRUCE GENOVESE, WILLIAM TAFURI, GEOFFREY BROWNE, BG CAPITAL GROUP LTD, LOOK BACK INVESTMENTS, INC., LIBERTY SILVER CORPORATION, AND OUTLOOK INVESTMENTS, INC.,

                  Defendants.

## MOTION FOR DISTRIBUTION OF NET SETTLEMENT FUND AND MEMORANDUM OF LAW IN SUPPORT

Lead Plaintiffs Todd Stanaford ("Stanaford") and Philip Hobley ("Hobley") ("Plaintiffs") respectfully submit this Motion for Distribution of Net Settlement Fund and Memorandum of Law in Support.[1] For the reasons set forth herein and in the accompanying Declaration of Edward J. Sincavage, CPA, in Support of Lead Plaintiffs' Motion for Distribution of the Net Settlement Fund, (the "Sincavage Declaration" or "Sincavage Decl.") attached hereto as Exhibit 1, prepared on behalf of Heffler Claims Administration, (the "Claims Administrator" or "Heffler"), Plaintiffs respectfully request that the Court enter the concurrently filed [Proposed] Order permitting Lead

---

[1] Unless otherwise indicated, capitalized terms shall have the same meanings as used in the Stipulation of Settlement filed with the Court on February 20, 2015 (Dkt. No. 133-1).

1

Counsel and the Claims Administrator to distribute the Net Settlement Fund to Authorized Claimants.

## I. PRELIMINARY STATEMENT

On March 9, 2015, the court entered its Order Granting Preliminary Approval of the Settlement (the "Preliminary Approval Order") (Dkt. No. 137). Since then, Lead Counsel and the Claims Administrator have worked diligently to provide Notice to all potential Class members and to administer the Settlement consistent with the Stipulation, the Plan of Allocation, the Preliminary Approval Order, and the Court's August 17, 2015 Order and Final Judgment (the "Final Approval Order") (Dkt. No. 185). As a result of the joint efforts, Lead Counsel and the Claims Administrator are now prepared to distribute the Net Settlement Fund to Authorized Claimants (the "Class Distribution" or "Distribution").

Upon reviewing all of the claims that have been submitted to date, the Claims Administrator and Lead Counsel propose the following determinations: (i) 224 timely and valid claims are to be accepted; (ii) ten (10) untimely but otherwise valid claims submitted after the filing deadline should be accepted; and (iii) 140 claims are invalid for various other reasons including, *inter alia,* failure to provide complete information or supporting documentation or failure to fit the definition of the Class. Plaintiffs believe that the proposed resolution achieves the most fair and equitable result for the Class as a whole.

## II. FACTUAL BACKGROUND

The Sincavage Declaration sets forth the factual and procedural background of the claims review and administration process.

The Settlement Notice and the Stipulation of Settlement (the "Stipulation"), provided for the settlement of this action on behalf of a Class consisting of all persons who purchased or

otherwise acquired common stock of Liberty Silver Corporation ("Liberty Silver") during the period February 10, 2010 through October 5, 2012 (the "Class Period"), both dates inclusive.

The Stipulation provided for a $1.0 million fund for the settlement of the Released Claims asserted against the Defendants. Lead Counsel retained Heffler Claims Group ("Heffler"), an experienced and well-regarded firm specializing in the administration of class action settlements, to distribute copies of the Notice and Proof of Claim forms to potential Class members, to process the submitted claims, and to manage and distribute the Net Settlement Fund to Authorized Claimants. More than 4,500 copies of the Notice of Settlement of Class Action and the Proof of Claim and Release were mailed to potential Class Members or their brokerage firms and other nominees. Thereafter, Heffler undertook the considerable task of receiving and reviewing all submitted claims. Throughout, Lead Counsel monitored and supervised the claims review process and regularly conferred with Heffler as difficult issues arose.

### III.  ARGUMENT

#### A.  The Proposed Order for the Distribution of the Class Settlement Fund Should be Approved

##### i.  The Court Should Approve the Claims Administrator's Administrative Determinations

Pursuant to the Preliminary Approval Order, all Class Members who wished to participate in the Settlement were required to submit Proofs of Claim, with complete supporting documentation, postmarked on or before June 23, 2015. *See* Dkt. No. 137. As demonstrated by the Sincavage Declaration, Heffler received and reviewed all submitted claims, and, to the extent that a Proof of Claim form lacked the required information or documentation to substantiate the claimant's transactions or was otherwise deficient in any regard, Heffler notified the claimant of the deficiency and advised the claimant as to the possible ways to cure the deficiency. Sincavage Decl. ¶8.

Heffler has received a total of 374 separate claims. Sincavage Decl. ¶10. Of this total number, 358 claims were postmarked on or before the submission deadline of June 23, 2015. *Id.* Of the timely-submitted claims, Heffler has determined that 224 of them are valid claims and should be accepted. *Id.*, Ex. A. In addition to the Timely Valid Claims, Heffler received ten (10) valid claims that were submitted after the deadline. Sincavage Decl. ¶13.

Lead Counsel recommends that the 224 timely and valid claims be accepted and approved by the Court. With respect to the ten (10) untimely but valid claims, Lead Counsel recommends that these claims also be accepted and approved by the Court.

"[A] district court overseeing [a] settlement distribution has inherent power to accept late claims." *In re Authentidate Holding Corp. Secs. Litig.,* No. 05 Civ. 5323 (LTS), 2013 U.S. Dist. LEXIS 11815, at *3 (S.D.N.Y. Jan. 25, 2013) (internal quotation marks and citation omitted). Relevant to the Court's determination are the so-called "*Pioneer* Factors": (1) the danger of prejudice; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship,* 507 U.S. 380, 395 (1993).

Lead Counsel believes that the equities are weighed against rejecting the valid claims from participating in the Settlement Fund simply because the claims were submitted after the claims submission deadline. The claims were submitted shortly after the deadline and while the claims were still being processed. In light of the *Pioneer* Factors above, allowing these claimants to participate in the Settlement Fund would create no prejudice or delay to the Class, and accepting these untimely claims of $25,732.75 will not have a material impact on the Settlement payments that Claimants with timely and valid claims will receive. *See* Sincavage Decl, ¶13, Exs. B and C.

For these reasons, Plaintiffs respectfully request that the Court approve Heffler's determination not to reject these claims. In the alternative, Plaintiffs request that the Court permit the one (1) untimely valid claim that provided an explanation for the late submission, and who has a recognized loss of $13,651.50, be allowed to participate in the settlement distribution. *See* Sincavage Decl, ¶13, Ex. B.

In addition, Plaintiffs respectfully request that the Court approve Heffler's determination to reject the 140 claims that were deemed invalid. Sincavage Decl. ¶15. As described in the Sincavage Declaration, Heffler sent rejection letters to all Claimants whose claims Heffler had determined to be ineligible. *Id.* at ¶9. Further, where a Proof of Claim was deficient in any respect or lacked sufficient documentation, Heffler advised the Claimant of the deficiency and the steps necessary to correct the deficiency. *Id.* at ¶8.

In the event Heffler receives additional correspondence or information from Class members, Heffler will review and process such information. To the extent newly received information demands adjustments of the claim amounts prior to distribution, Heffler will update its claims database with the new information and will advise Lead Counsel. Sincavage Decl. ¶16.

However, Plaintiffs recognize that there must be a final cut-off date for additional claims in order to conduct a timely and orderly proportional distribution of the Net Settlement Fund. Plaintiffs believe that a further delay in the distribution would be manifestly unfair to the Class members who have submitted timely claims. Accordingly, Plaintiffs also respectfully request that the Court's distribution order direct that claims submitted after November 8, 2016—more than one (1) year after the claims submission deadline and after Heffler had completed its initial processing of claims—should be rejected.

Plaintiffs request that the Court approve the administrative determinations accepting and rejecting claims as set forth herein.

**B.     The Court Should Approve the Claims Administrator's Fees and Expenses**

In its Final Approval Order, the Court retained and reserved jurisdiction over the allocation and distribution of the Net Settlement Fund. Final Judgment, at ¶14. Pursuant to the Court's continuing jurisdiction over this matter, Plaintiffs respectfully request that the Court approve the fees and expenses requested by Heffler.

As Claims Administrator for the Settlement Fund, Heffler was and/or is responsible for, among other things, printing and mailing copies of the Notice and Proof of Claim forms to Class members, effecting publication of the Summary Notice of the Settlement in *Investors' Business Daily* and via *PR Newswire*, effecting publication of the Supplemental Notice in *Investors' Business Daily,* processing and reviewing the filed claims, calculating the *pro rata* distribution amount by calculating each Authorized Claimant's percentage of the total Net Settlement Fund in accordance with the Plan of Allocation, and distributing the Net Settlement Fund to accepted claimants. *See* Sincavage Decl. ¶¶3-9, ¶21.

As set forth in the Sincavage Declaration, Heffler requests the Court to authorize Lead Counsel to pay the balance of $1,803.47 in remaining fees and expenses from the Settlement Fund. Sincavage Decl. ¶21. This amount accounts for the remaining fees and costs incurred in connection with settlement administration. *Id.*

Accordingly, Plaintiffs also respectfully request that the Court approve Heffler's requested remaining fees and expenses for its services.

### C. The Court Should Order the Distribution of the Net Settlement Fund and Bar Further Claims Against the Net Settlement Fund

Plaintiffs respectfully request that the Court enter the [Proposed] Order directing and authorizing the distribution of the Settlement Fund—after the deduction of the fees and expenses previously awarded and requested herein—to the Class members whose claims have been accepted. These claims are listed in Exhibits A-C to the Sincavage Declaration.

Moreover, in order to allow the full and final distribution of the Net Settlement Fund, it is necessary to bar any further claims against the Net Settlement Fund and to provide that all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the claims submitted herein, or otherwise involved in the administration or taxation of the Gross Settlement Fund or the Net Settlement Fund, be released and discharged from any and all claims arising out of such involvement, beyond the amount allocated to them.

Accordingly, Plaintiffs respectfully request that the Court bar any further claims against the Net Settlement Fund and release and discharge all persons involved in the review, validation, calculation, tabulation or any other aspect of the processing of the claims filed in this Action or who are otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund.

### D. The Court Should Approve the Proposed Disposition of Any Unclaimed or Uncashed Balanced

There is a strong likelihood that not all of the payments to be distributed to accepted Class Members will be cashed promptly. Accordingly, in order to further encourage Class Members to cash their Class Distributions checks promptly and to avoid or reduce future expenses relating to uncashed checks, Lead Counsel and the Claims Administrator propose that all checks for distribution to the Claimants bear the notation "CASH PROMPTLY. VOID 180 DAYS AFTER ISSUE DATE," or words of similar import.

Further, in order to allow a subsequent distribution of any balance that may remain in the Settlement Fund after the initial distribution, whether by reason of returned funds, tax refunds, interest, uncashed drafts, or otherwise, any funds that remain in the Net Settlement Fund one year after the initial distribution and after payment of any unpaid costs or fees incurred in administering the Net Settlement Fund for such distribution shall be re-distributed to Class Members who have cashed their payments and who would receive at least $10.00 from such re-distribution. If after six months following such re-distribution any funds shall remain in the Net Settlement Fund, then such balance should, pursuant to the Stipulation, be contributed to a non-profit or charitable organization designated by Lead Counsel. Here, Lead Counsel has designated the Public Justice Foundation, a not-for-profit charitable organization devoted to litigation and education in issues of public interest, as the intended recipient of any residual funds in the Net Settlement Fund, upon approval by the Court.

### E. The Claims Administrator May Discard Certain Records Within A Reasonable Time After The Initial Distribution

Lead Counsel respectfully request that the Class Distribution Order provide that: (i) the Claims Administrator and Lead Counsel may discard paper or hard copies of the Proof of Claim forms and all supporting documentation one (1) year after the initial Distribution of the Net Settlement Fund to Authorized Claimants; and (ii) the Claims Administrator and Lead Counsel may discard copies of such materials maintained in electronic format three (3) years after the initial distribution of the Net Settlement Fund.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter the [Proposed] Settlement Distribution Order.

DATED: March 9, 2017					Respectfully submitted,

							By:	/s/ Gary S. Menzer
								Gary S. Menzer, Florida Bar No. 60386
								**MENZER & HILL, P.A.**
								7280 W. Palmetto Park Rd., Suite 301-N
								Boca Raton, FL 33433
								Telephone: (561) 327-7207
								Facsimile: (561) 431-4611
								Email: gmenzer@menzerhill.com

								*Liaison Counsel for Plaintiffs*

								William B. Federman (admitted *Pro Hac Vice)*
								**FEDERMAN & SHERWOOD**
								10205 North Pennsylvania Ave.
								Oklahoma City, OK 73120
								Telephone: (405) 235-1560
								Facsimile: (405) 239-2112
								Email: wbf@federmanlaw.com

								*Lead Counsel for Plaintiffs*

9

**CERTIFICATE OF SERVICE**

This is to certify that on March 9, 2017 a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

/s/Gary S. Menzer
Gary S. Menzer
